1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ORR WATER DITCH CO., *et al*.,

    Defendants.

In re: State Engineer Ruling #6126

Case No. 2:73-cv-00030-LDG

**ORDER**

    The Schulers sought to change their water rights, as established under the Orr Ditch Decree. They petitioned the State Engineer for permission to change their point of diversion from Meadow Ditch to Big Ditch. After the State Engineer published notice of the petition, Big Ditch Water Co., manager of water rights flowing through Big Ditch, protested. Their reasons for protest included a conflict in water rights between those already flowing through the ditch and the Schulers' proposed change, a general detriment to public interest, and not having previously consented to the Schulers' proposed change. The State Engineer, relying on studies previously done on the ditch, determined that granting the petition for more water would not conflict with established rights, would not be detrimental

1  to the public interest, and would not ultimately wrest control from Big Ditch Water Co. Big

2  Ditch Water brought the instant petition for judicial review of the State Engineer's Ruling

3  #6126, and the State Engineer has filed a response.

4                                    **I. Background**

5        On December 23, 2009, the Schulers filed Application 79102 to change a point of

6  diversion provided by the Orr Ditch Decree. Approval of this application would condone a

7  change in the Schulers' point of diversion for Steamboat Creek water rights. Instead of

8  flowing through Meadow Ditch, the water would flow through Big Ditch. The Schulers

9  sought this change because, subsequent to attaining their water rights, third-party

10  development along Meadow Ditch prevented the Schulers from receiving their expected

11  water.

12        Beyond the application to the State Engineer, the Schulers also required legal

13  permission from the Big Ditch Water Co. to change their point of diversion.  Big Ditch

14  Water Co. maintains the Big Ditch stream system and monitors the water rights passing

15  though the ditch. Big Ditch Water Co. asserts that it "had not consented to the delivery of

16  Meadow Ditch water rights through Big Ditch" and continues to oppose such action.

17        The State Engineer submitted the notice of application for publication in the Reno

18  Gazette Journal on January 21, 2010. The newspaper first published the notice on January

19  27, 2010. Three subsequent publications were made at weekly intervals as well.

20        On March 18, 2010, Big Ditch Water Co. filed a protest with the State Engineer,

21  "asking . . . to deny the application or, in the alternative, to hold a hearing."  Big Ditch Water

22  Co. protested on three grounds: "(1) the proposed use would conflict with the existing rights

23  of Big Ditch water rights owners, (2) the proposed use threatens to prove detrimental to the

24  public interest, and (3) Big Ditch Water Co. has not consented and opposes the use of Big

25  Ditch to transport Meadow Ditch water."  The State Engineer advised the Schulers of Big

26  Ditch Water Co.'s protest via certified mail on March 25, 2010.

On April 21, 2010, the State Engineer and various staff "investigated the Big Ditch flow capacity." The State Engineer found that Big Ditch could hold enough water to service Application 79102. He also concluded that the office possessed sufficient information to make a determination such that no administrative hearing was necessary. In so concluding, the State Engineer also relied upon information collected during another study of Big Ditch held on April 16, 2009.

On October 21, 2010, the State Engineer received a letter dated October 4, 2010, from the Schulers responding to Big Ditch Water Co.'s protest. The Schulers encouraged further findings by the State Engineer's Office, and again requested approval of Application 79102.

On January 29, 2011, Big Ditch Water Co. received a letter from the State Engineer, asking whether they still wanted to pursue their protest of Application 79102. In response, on March 11, 2011, Big Ditch Water Co. informed the State Engineer that it "still intend[ed] to pursue its protest." Big Ditch Water Co. also again requested a hearing to "develop evidence and testimony and to provide an adequate record for potential judicial review." On June 15, 2011, without first holding a hearing, the State Engineer overruled Big Ditch Water Co.'s protest, and approved Application 79102 in Ruling 6126.

Big Ditch Water Co. now asks that the Court vacate Ruling 6126, and remand the matter to the State Engineer with instructions to either 1) deny Application 79102, or 2) hold a protest hearing on Application 79102, in compliance with both Nevada water law statutes and State Engineer regulations. Big Ditch Water Co. argues that the State Engineer failed to abide by timelines established by Nevada statute in the execution of his duties as State Engineer, that the State Engineer abused his discretion by not holding a protest hearing, and that the State Engineer denied Big Ditch Water Co. of due process. The State Engineer argues that he complied with statutory timelines, that the granting of

3

1  protest hearings is purely discretionary, and that the sum of the Big Ditch Water Co.'s

2  claims does not amount to a denial of due process.

3  ## II.  Analysis

4      This Court has proper jurisdiction over the instant case. This Court previously ruled

5  regarding this stream system in *United States v. Orr Water Ditch Co.*, No. A3 (D. Nev.

6  1944) (*Orr Ditch* Decree).  Pursuant to Nev. Rev. Stat. § 533.450(1), this Court therefore

7  maintains jurisdiction over any case arising from dispute of the same stream system.

8      The State Engineer interprets and applies the water law within Nevada. *United*

9  *States v. Orr Water Ditch Co.*, 914 F.2d 1302, 1308 (9th Cir. 1990).  Nevada law gives him

10 the power to "determine the relative rights of. . .  various claimants" regarding the use of

11 water.  Nev. Rev. Stat. § 533.090(1), (2).  When this Court addresses Nevada water law, it

12 defers to decisions rendered by the State Engineer, considering them "prima facie correct."

13 Nev. Rev. Stat. § 533.450(10).  However, "[i]t is [also] the duty of a reviewing court to

14 ensure that an agency follows its own procedural rules." *Kelley v. Calio*, 831 F.2d 190, 191-

15 92 (9th Cir. 1987).

16

17     The Big Ditch Water Co. asserts that the State Engineer violated Nevada water

18 statutes and regulations, as evidenced by various procedural disputes. They claim the

19 State Engineer did not timely publish the Notice of Application in the Reno Gazette Journal

20 within 30 days, as per Nev. Rev. Stat. § 533.360(1).  Nevada Revised Statute § 533.360(1)

21 requires that the State Engineer, "within 30 days [of initial filing], publish or cause to be

22 published once a week for 4 consecutive weeks . . .  a notice of the application," in a local

23 newspaper.

24     The Schulers initially filed Application 79102 on Dec. 23, 2009.  The Reno Gazette

25 Journal published notice of the application on Jan. 27, 2010 – more than 30 days after the

26 initial filing.  The State Engineer states that his office submitted the Notice of Application to

the newspaper on Jan. 21, 2010, within the 30-day statutory period.  The State Engineer claims that by sending the notice to the newspaper on Jan. 21, he "cause[d] to be published" the requisite notice, even if it was not published by the newspaper within the statutory time period.  The State Engineer states that he has "no control over the newspapers" within Nevada. The inability of a newspaper to publish within statutory deadlines exceeds the scope of the State Engineer's authority.

Here, the State Engineer concedes that the initial notice of application was not published by the newspaper within 30 days of submission by the Schulers.  However, he has also shown that he did take action to publish the notice in mailing the application to the Reno-Gazette Journal on Jan. 21, 2010, before the 30-day limit.  Nevada law considers the doctrine of substantial compliance when examining adherence to statutes and rules. *Leyva v. Natl. Default Servicing Corp.*, 255 P.3d 1275, 1278 (Nev. 2011), *Rogers v. State*, 455 P.2d 172, 173 (Nev. 1969). The "court looks at the language used and policy and equity considerations . . . to examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical compliance with the statutory or rule language." *Leyva*, 255 P.3d at 1278. "Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, [the Nevada Supreme Court] has found such substantial compliance to satisfy the statute." *Id.* at 1278-79.

The Ninth Circuit acknowledges that substantial compliance doctrine can be "problematic" in application when addressing deadlines, but has condoned such "when it would not defeat the policies of the underlying statutory provisions." *Christensen v. C.I.R.*, 142 F.3d 442 (9th Cir. 1998). Also, in deference to regulatory agencies, the Supreme Court "would be most reluctant to conclude that every failure of an agency to observe [every] procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Brock v. Pierce County*, 476 U.S. 253, 260 (1986).

5

1    While the notice of application did not appear in the newspaper within 30 days of

2    submission, the State Engineer did act within that allotted time to cause publication and

3    comply with §533.360(1).  After the State Engineer sent the application to the newspaper

4    for publication, he had little, if any, control over the final details of its publication.  Further,

5    nothing in the record suggests that the State Engineer deviated from established

6    procedures in submitting the notice; no evidence demonstrates whether the State Engineer

7    submitted the notice of application later than usual, or whether other such notices have

8    been published outside of the 30-day window.  The Court finds that this issue is insufficient

9    to warrant the relief requested by the Big Ditch Water Co., particularly when, as here, the

10   State Engineer substantially complied with statute by submitting notice for publication

11   during the 30-day period.

12

13   The Big Ditch Water Co. claims that the State Engineer untimely accepted the

14   Applicant's answer to Big Ditch Water Co.'s protest, in violation of Nev. Admin. Code §

15   533.140(1).  After an application has been published, §533.365(1) states that "[a]ny person

16   interested may, within 30 days after the date of last publication of the notice of application,

17   file with the State Engineer a written protest against the granting of the application . . .."

18   Following the publication of the Notice of Application, Big Ditch Water Co. filed a protest

19   against granting the application on Mar. 18, 2010.

20   When a protest is received, §533.365(7) directs the State Engineer to follow Nevada

21   Administrative Code procedures. Pursuant to Nev. Admin. Code §533.140(1), "[a]n

22   applicant may, within 45 days after service of a notice of protest, file an answer to a protest

23   filed against his or her application."  The Schulers responded on Oct. 21, 2010, past the

24   45-day limit imposed by Nev. Admin. Code § 533.140(1).  The Big Ditch Water Co. claims

25   that the State Engineer's consideration of this tardy reply from the Schulers contributed to

26   an "abuse of discretion" in rendering any decision on Application 79102.  The State

1   Engineer concedes that the Schulers filed an untimely response; however the response

2   "was not relied on by the State Engineer and is not cited anywhere in the ruling."

3       In applying Nevada law, the Nevada Supreme Court has stated, "Administrative

4   agencies may receive and weigh evidence and a reviewing court may not substitute its

5   judgment on questions of fact . . .  On questions of fact, this court is limited to determining

6   whether substantial evidence exists in the record to support the administrative agency's

7   decision." *Clements v. Airport Auth. of Washoe County*, 896 P.2d 458, 461 (Nev. 1995).

8   Without substantial evidence to support its assertion that the State Engineer considered

9   the tardy reply, the Court will reject Big Ditch Water Co.'s argument and grant deference to

10  the State Engineer's findings of fact and evaluation of evidence.  While the Schulers

11  submitted an untimely response, the record does not support a conclusion that the State

12  Engineer relied upon, or even considered, that untimely response.  Accordingly, the Court

13  finds that this issue is insufficient to warrant the relief requested by the Big Ditch Water Co.

14

15      The Big Ditch Water Co. also asserts that the State Engineer untimely issued a

16  decision on Application 79102 in violation of §533.370(2), as in effect from Jul. 1, 2009 to

17  June 9, 2011.  The statute charges the State Engineer with rendering a decision on

18  applications "within 1 year after the final date for filing a protest." *Id.* The State Engineer

19  issued Ruling 6126 in June 2011, approximately three months beyond the one-year limit.

20  However, the State Engineer counters that subsection 4 of the statute provides that "[i]f the

21  State Engineer does not act upon an application within 1 year after the final date for filing a

22  protest, the application remains active until acted upon by the State Engineer."  He

23  contends that any application not resolved within a year "remains active[,]" and therefore a

24  June 15, 2011 ruling does not violate §533.370(2).

25      Here, on first blush, the two subsections appear at odds in their requirements. One

26  mandates a ruling by the State Engineer within a year of the filing date, and the other

7

1   states that any filing remains active after that same year deadline without prescribing a

2   penalty for failure to meet the deadline. However, the doctrine of directory statutes resolves

3   the issue.

4         Where a statute includes an arbitrary time limit, one "designed. . . to promote the

5   proper, orderly, and prompt conduct of business," the statute is considered directory. 82

6   C.J.S. Statutes § 497. Directory statutes contain "no negative words restraining the doing

7   of the act after the time specified." *Id*. "Thus, where a statute directs that certain

8   proceedings be done in a certain way or at a certain time, the law normally will be regarded

9   as directory, and proceedings under it will be held valid even though the requirements of

10  the statute as to form and time have not been strictly obeyed since the time and manner

11  are not of the essence of the thing required to be done." *Id*.

12        Nevada courts have not yet addressed directory statutes. But, "[t]he rule in California

13  and the majority of United States jurisdictions is that when a consequence is [not]

14  enunciated for failing to comply with an act on a given date, that date is deemed to be

15  jurisdictionally. . . directory." *Ward v. Fremont Unified Sch. Dist.*, 80 Cal. Rptr. 815, 821

16  (Cal. App. 1st Dist. 1969).  Section 533.370 appears designed to promote order and proper

17  conduct by the State Engineer.  The statute prescribes no penalty to the State Engineer

18  when the 1-year deadline is not met.  And, being directory, proceedings should be held

19  valid even when form is not strictly obeyed.  The directory nature of the statute is confirmed

20  by subsection (4), imposing no penalty on the State Engineer if a decision has not yet been

21  rendered after one year.

22        The State Engineer reached a decision past the 1-year deadline with no penalty

23  imposed upon, or sustained by him. Therefore, while he did not issue Ruling 6126 within

24  the one-year period established in Nev. Rev. Stat. § 533.370(2), subsection (4) establishes

25  that the application remained active until he issued a ruling.  The Court finds that this issue

26  is insufficient to warrant the relief requested by the Big Ditch Water Co.

1    Additionally, the Big Ditch Water Co. claims that the State Engineer abused his

2  discretion both by not holding a hearing and by not making various findings before

3  approving Application 79102.  After receiving a protest to a published application, "[t]he

4  State Engineer shall consider the protest, and may, in his or her discretion, hold hearings

5  and require the filing of such evidence as the State Engineer may deem necessary to a full

6  understanding of the rights involved. . .  [giving notice] at least 15 days before the date set

7  for the hearing." Nev. Rev. Stat. § 533.365(3) (Jul. 1, 2007) (current version at Nev. Rev.

8  Stat. § 533.365(4), effective July 1, 2011).

9    The Big Ditch Water Co. attempts to limit the statute, which establishes protest

10  hearings as a purely discretionary practice for the State Engineer, to coincide with notions

11  of "fairness" under Due Process.  It cites *Revert v. Ray*, 95 Nev. 782 (1979), where the

12  State Engineer had already engaged in an administrative hearing with applicants that had

13  claimed a specific water right.  The State Engineer arrived at a ruling without addressing a

14  specific claim made by the applicants, instead relying on a "post-review brief" to justify his

15  decision.  The Nevada Supreme Court remanded that issue for further consideration.   The

16  Big Ditch Water Co. claims that the remand for a "full and fair determination of the. . .

17  claim" should signify an infringement of Due Process rights when anything less occurs.

18    In contrast, the State Engineer contends that this reading of *Revert* is incorrect; the

19  Nevada Supreme Court's holding is not "for the proposition that if someone wants an

20  administrative hearing they get it."  The State Engineer argues his actions do not amount to

21  a denial of due process because in not calling an administrative hearing, he exercised

22  statutorily-outlined discretion.

23    In *I.N.S. v. Rios-Pineda*, 471 U.S. 444 (1985), the Supreme Court examined the line

24  between holding discretionary administrative hearings and when denying those hearings

25  may constitute an abuse of that discretion. The Board of Immigration Appeals, headed by

26  the Attorney General, received discretionary power to reopen immigration cases. *Id*. at 449.

9

1   Respondents, seeking suspension of a deportation ruling, brought suit for abuse of

2   discretion when the Attorney General denied their motion to reopen their case. *Id*. The

3   Supreme Court held that even though the Respondents had met minimum established

4   requirements to have their case reexamined, the discretionary power of the Attorney

5   General controlled. *Id.* at 450. The Attorney General's broad discretionary power in

6   granting administrative proceedings was again confirmed in *I.N.S. v. Doherty*, 502 U.S.

7   314, 324 (1992). Similarly, the Ninth Circuit has stated that, "only a showing of the clearest

8   abuse of discretion can sustain an exception," to the discretion afforded empowered

9   administrative bodies. *Reese Sales Co. v. Hardin*, 458 F.2d 183, 186 (9th Cir. 1972).

10          Here, §533.365(3) plainly establishes the State Engineer's decision to hold any

11  protest hearings is discretionary.  As such, barring the "clearest abuse of [that] discretion,"

12  the statute permits the State Engineer alone to determine when protest hearings are

13  granted. The Big Ditch Water Co. does not present any evidence suggesting the "clearest"

14  abuse required to validate such a claim.  Without a showing of the "clearest abuse of

15  discretion," the Court finds that this issue does not warrant the relief requested by the Big

16  Ditch Water Co.

17

18          The Big Ditch Water Co. states that the sum of multiple "abuse[s] of discretion"

19  amounts to a denial of due process, warranting relief from the State Engineer's ruling.

20  Nevada water law views water rights as a real property interest. *Application of Filippini*, 202

21  P.2d 535, 537 (1949).  Real property interests are subject to a due process analysis, as

22  outlined in *Matthews v. Eldridge*, 424 U.S. 319 (1976).  The Big Ditch Water Co. further

23  cites *Goldberg v. Kelly*, 397 U.S. 254 (1970), asserting that, "parties have a due process

24  right to confront evidence offered against them in administrative hearings." Under this

25  analysis, the Big Ditch Water Co. asserts that any possible "loss of delivery time of Big

26  Ditch water [by current water right holders, in consequence of approving more Meadow

10

1   Ditch water to run into Big Ditch, as the Schulers seek] is a loss of a property right."  Thus,

2   because Big Ditch Water Co. had "no official opportunity" to respond before the State

3   Engineer issued Ruling 6126, it concludes that third-parties may be erroneously deprived of

4   water rights.

5        In response, the State Engineer again cites the two investigations of the State

6   Engineer, and the determination that "Big Ditch has the excess capacity to carry the water

7   rights in Application No. 79102."  The investigations showed that current right holders

8   "would not be harmed" from more water moving through Big Ditch.

9        "The extent to which procedural due process must be afforded the recipient is

10  influenced by the extent to which he may be 'condemned to suffer grievous loss,'"

11  *Goldberg*, 397 U.S. at 262-63. Despite Ruling 6126, the Schulers have not gained access

12  to Big Ditch, nor has the State Engineer forced Big Ditch Water Co. into surrendering

13  control of Big Ditch.  Further, "resolution of the issue whether the administrative procedures

14  provided here are constitutionally sufficient requires analysis of the governmental and

15  private interests that are affected." *Mathews*, 424 U.S. at 334. The record cites no private

16  interest of the Big Ditch Water Co. that has been affected, no erroneous deprivation has

17  occurred, and the State Engineer has merely fulfilled his statutorily defined duties.

18       The Supreme Court in *Edwards v. Balisok* examined a similar claim of a due

19  process violation by a prisoner who lost good-time credit for various "prison infractions."

20  520 U.S. 641, 643 (1997).  The prisoner asserted multiple abuses of discretion by the

21  administrative hearing officer who deprived him of his good-time credits.  The Court stated

22  that if the administrative hearing's processes were faulty, it could necessarily imply that the

23  judgment rendered was incorrect.  *Id*.  However, the Court also distinguished that "[the

24  plaintiff's] claim posited that the procedures were wrong, but not necessarily that the result

25  was."  *Id* at 645.  Despite the prisoner's claim of a violation of due process, the Court stated

26  that there was no "reason to believe. . .  that using the wrong procedures necessarily

11

1   vitiated the denial of good-time credits." *Id*. at 646.  Because the claim only addressed

2   incorrect procedures, the Court denied the prisoner's due process claim, and upheld the

3   denial of good-time credits. *Id.* at 648.

4         Here, similar to the prisoner in *Edwards*, the Big Ditch Water Co. claims a denial of

5   due process in Ruling 6126, making multiple claims that the State Engineer erred in his

6   duties and abused his discretion. They claim this abuse of discretion constitutes a due

7   process violation, suggesting a faulty decision on Ruling 6126.  As in *Edwards*, the Big

8   Ditch Water Co. suggests that the sum of errors should invalidate the rendered judgment.

9   However, the Big Ditch Water Co. has not argued that the rendered judgment is otherwise

10  unreachable without further review.

11        As in *Edwards*, only when the charges alleged of the administrative officer would

12  necessarily imply the invalidity of their ruling, is it appropriate to conclude that the issued

13  administrative decision should be vacated and re-heard.  Minor procedural discrepancies

14  do not invalidate administrative decisions when the decisions reach otherwise legitimate

15  results.  In *Edwards* the Court upheld the officer's ruling, because the prisoner did not

16  question the validity of the judgment and only the means by which it was rendered, even

17  despite accusations of an abuse of discretion.  Here, the Big Ditch Water Co. does not

18  directly question the validity of Ruling 6126.  They only request further hearings and

19  evidence, confident that such will lead to a different decision by the State Engineer.  The

20  State Engineer maintains that his office reached the appropriate decision based on studies

21  conducted and timely filed documents. The Big Ditch Water Co. questions only the means

22  and methods used by the State Engineer in rendering his decision. Similar to the Supreme

23  Court's language in *Edwards*, there is no reason to believe that the means used or not

24  used by the State Engineer invalidates Ruling 6126.

25        The State Engineer did not deny due process to the Big Ditch Water Co. in issuing

26  Ruling 6126. The Court will not vacate the ruling on the basis of this claim.

**III.  Conclusion**

For the reasons stated above,

THE COURT HEREBY ORDERS that the Big Ditch Water Company's Petition (#1) for Judicial Review of State Engineer's Ruling No. 6126 is DENIED.

DATED this _____ day of September, 2013.

_____
Lloyd D. George
United States District Judge